IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex )
rel. ROBERT I. SHERMAN, )
　　　　　　　　　　　　　　　　)
　　　　Petitioner, )
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　) No. 03 C 0385
　　　　v. )
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　) Wayne R. Andersen
PEOPLE OF THE STATE OF ) District Judge
ILLINOIS, )
　　　　　　　　　　　　　　　　)
　　　　Respondent.

## MEMORANDUM, OPINION AND ORDER

Before the Court is Petitioner, Robert Sherman's, motion for reconsideration. For the reasons set forth below, we deny the motion for reconsideration.

## BACKGROUND

Sherman was found guilty of domestic battery by the Circuit Court of Cook County ("trial court") and initially sentenced to a term of conditional discharge, which included mandatory domestic violence counseling. On November 23, 1998, the trial court found Sherman in violation of the terms of his conditional discharge and delayed sentencing until January 8, 1999 to allow Sherman time to comply with the terms of the conditional discharge. On January 8, 1999, Sherman had still not completed his domestic violence counseling and was sentenced to 15 days in the custody of the Cook County Department of Corrections. Sherman was then given another opportunity to complete the terms of his conditional discharge, yet did not finish his domestic violence classes or pay the monthly conditional discharge fees. Accordingly, the trial court vacated the sentence of conditional discharge and sentenced Sherman to 120 days in the Cook County Department of

Corrections.

Sherman remained free on bond as he appealed his conviction and sentence to the Illinois Appellate Court, which affirmed the trial court. Sherman exhausted his state remedies when the Illinois Supreme Court denied his leave to appeal. Shortly thereafter, Sherman filed an "Emergency Petition for Writ of Habeas Corpus" with this Court several days before he was to serve his sentence.

This Court denied Sherman's Petition in a Memorandum Opinion and Order dated, May 4, 2005, by which time Sherman had served his sentence in the Cook County Department of Corrections. Thereafter, Sherman filed a motion asking this Court to reconsider our denial of habeas corpus relief. Sherman's motion to reconsider argues that he is "in custody," a prerequisite to habeas corpus relief, due to the fact that his prior conviction renders him ineligible to own or posses a firearm under a number of state and federal laws. Although Sherman feels that his Second Amendment rights are being violated in a manner that places him "in custody," he cites to no legal precedent or authority supporting such a conclusion.

## DISCUSSION

This Court has jurisdiction to issue a writ of habeas corpus only on behalf of a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254. The "in custody" requirement is not so strict as to require actual physical confinement. However, in order for plaintiff to demonstrate that he is in custody and entitled to habeas corpus relief, he must show a significant restraint on his personal liberty "not shared by the public generally," such as an unexpired term of parole. *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963).

The Supreme Court has explicitly stated that "once the sentence imposed for a conviction has

completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). Examples of "collateral consequences" that do not render a petitioner in custody include the inability to obtain a license to engage in a particular profession, own or possess firearms, or hold public office and the requirement to register as a sex offender. *See, e.g., Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (sex offender registration requirements do not constitute custody); *Harvey v. South Dakota*, 526 F.2d 840, 841 (8th Cir.1975) (per curiam) (being barred from certain profession or from possessing or owning firearms, coupled with the status of being a recidivist if another crime was committed, did not equal "custody"), *cert. denied*, 426 U.S. 911; *Furey v. Hyland*, 395 F.Supp. 1356, 1360 (D.N.J.1975) (inability to hold public office not "custody"), *aff'd mem.*, 532 F.2d 746 (3d Cir.1976 ). Simply put, "even grievous collateral consequences stemming directly from a conviction cannot, without more, transform the absence of custody into the presence of custody for the purpose of habeas review." *Lefkowitz v. Fair*, 816 F.2d 17, (1st Cir. 1987).

The mere inability to acquire or possess firearms does not give rise to the type of restraint on personal liberty that satisfies the "in custody" requirement. If we were to accept such an expansive view of the "in custody" requirement, we would read it out of §2254. Once convicted, citizens often forfeit many rights, such as the right to vote, hold office, or engage in certain professions. Nevertheless, a state's decision to revoke or limit a convict's voting, or other rights, as significant as they may be, do not rise to the level of placing that citizen "in custody."

However, Sherman arguably satisfied the "in custody" requirement in a manner unrelated to his inability to purchase or posses firearms. In determining whether a petitioner has met the "in

3

custody" requirement, we look to the time of the initial filing. *See, e.g., Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("The District Court's conclusion that [Petitioner's] release from prison caused his petition to be moot because it no longer satisfied the "in custody" requirement of the habeas statue was in error.") When Sherman filed his initial petition for a writ of habeas corpus he was on bond, sentenced, and due to begin serving his sentence in a matter of days. This likely satisfied the "in custody" requirement. *See, e.g., Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (finding that a petitioner who remained free on a recognizance bond pending the execution of his sentence was "in custody" for purposes of habeas relief).

Accordingly, we will reach the merits of Sherman's claim. Sherman asks us to apply the standards set forth in *United States v. Throckmorton*, 98 U.S. 61 (1878), a case dealing with allegations that fraud prevented a party from presenting its case. However, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, we can only disturb a state court ruling that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States [] or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254 (d). A state court "acts contrary to clearly established federal law if it applies a legal rule that contradicts [The Supreme Court's] prior holdings or if it reaches a different result from one of [The Supreme Court's] cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000). Therefore, we must determine whether any binding precedent that remains from the *Throckmorton* decision, or any other Supreme Court decision or federal law, was unreasonably

4

applied to his case.

Sherman claims he was never informed of the charges for which he was tried, the state failed to prove him guilty of causing bodily harm, one of the essential elements of domestic battery, and the trial court jailed him to interfere with his ability to prosecute his appeal. Additionally, Sherman posits that the charges against him were concocted by a police officer who held a grudge against him and that the prosecutor and trial court were likewise biased against him due to his political activism.

The transcripts and court documents show that Sherman was charged with, and found guilty of, domestic battery. All elements of domestic battery, including the fact Sherman inflicted bodily harm upon his son, were charged and proven beyond a reasonable doubt.

Sherman was charged in Complaint No. 98 MC 3003696, which read:

> Robert I. Sherman, 778 Stonebridge, Buffalo Grove, IL., has, on or about June 2, 1998 at 778 Stonebridge, Buffalo Grove, Cook County committed the offense of Domestic Battery in that [he] knowingly and without legal justification caused bodily harm to [R.S.], a family member of defendant, in that said defendant struck [R.S.] in the face, chest and legs with his hands. In violation of 720 Illinois Compiled Statute 5/12-3.2(a)(1).

At trial, the defendant testified that:

> I went to [R.'s] room as has been described by other witnesses. I approached [R.'s] bed and slapped [R.] twice.
>
> ##################
>
> I asked my wife, Celeste, if she had seen any injuries. Celeste told me that she had seen swelling at the lips and swelling at the side of the face.

(TR. 60, 66)

Accordingly, Sherman's own testimony established that he caused bodily harm. Moreover, the trial court found Sherman guilty of causing bodily harm. The Illinois Appellate Court addressed, and rejected, Sherman's assertion that no bodily harm occurred. Rule 23 Order, No. 1-98-3223, June 3, 1999, Pg. 3-4 ("Sherman admits striking his son (R.S.), but says his actions did not constitute the

element of 'bodily harm' required for a conviction of the offense of domestic battery. We disagree.")

There is also nothing in the record to suggest that the trial court jailed Sherman in an effort to frustrate his ability to prosecute an appeal. To the contrary, the trial court delayed imposing a sentence after its initial determination that Sherman had violated the terms of his conditional discharge so that Sherman could bring himself into compliance with his conditional discharge and avoid jail. Moreover, at Sherman's request, the Illinois Appellate Court granted multiple extensions of time to submit appellate briefs.

Sherman had notice of the charges against him, a fair trial, and his access to both the trial court and Illinois Appellate Court was not impeded. This is all the Constitution requires. Neither the trial court, nor the Illinois Appellate Court unreasonably applied federal law. As such, we deny Sherman's motion to reconsider.

## CONCLUSION

For the foregoing reasons, Sherman's motion for reconsideration [26-1] is denied. This is a final order.

Wayne R. Andersen
United States District Judge

Dated: January 19, 2006